JOURNAL ENTRY AND OPINION
{¶ 1} Laura Ordosch, Executrix of the Estate of Glenn Brown, appeals from the order of the trial court that affirmed the Ohio Department of Job and Family Services's ("ODJFS") determination that Brown made a prohibited asset transfer resulting in a Medicaid ineligibility penalty. For the reasons set forth below, we affirm.
 {¶ 2} The record reflects that on July 27, 2007, Brown loaned Ordosch, his daughter, $43,876, secured by a promissory note. In relevant part, the promissory note provided for repayment in 60 monthly installments of $731.26. It further provided that no interest shall be due for the first 60 monthly payments, and that the note cannot be sold. In addition, it stated in relevant part as follows:
 {¶ 3} "In no event shall the term of the Promissory Note extend beyond the actuarial guidelines for the age of the Holder as set forth in * * *26 CFR 20.2031-7 of the Social Security Administration."
 {¶ 4} Also on July 27, 2007, Brown applied for Medicaid nursing home vendor payments. The ODJFS determined that Brown had made gifts to Ordosch during the "lookback" period which resulted in an ineligibility penalty of 9.69 months under OAC 5101:1-39-07. The ODJFS further determined that the loan/ promissory note to Ordosch constituted a prohibited asset transfer which resulted in an additional 8 months of Medicaid ineligibility, to January 2009.
 {¶ 5} Brown appealed the portion of the decision which related to the loan/promissory note to the State Hearing Office. He asserted that the promissory note met all requirements of OAC 5101:1-39-27.3(F) so the funds given in exchange for *Page 4 
the promissory note are therefore not an "available asset." He further argued that because the note at issue cannot be sold, it is not an "available resource," under OAC 5101:1-39-27.3(C) and is therefore not subject to the improper transfer penalties. In this connection, he additionally complained that the OAC provisions were more onerous than the federal enabling legislation, 42 U.S.C. 1396 et seq., and were therefore invalid. Brown also maintained that payments which he received from Ordosch should not be imputed as "income" for Medicaid purposes.
 {¶ 6} The State Hearing Office rejected Browns claims. It determined that the promissory note did not meet the requirements of OAC5101:1-39-27.3(F), the $43,876 given to Ordosch was improperly transferred, and the payments made under the note were properly included as income under OAC 5101:1-39-27.3.
 {¶ 7} Brown appealed to the court of common pleas pursuant to R.C. Chapter 119. The trial court affirmed the agency decision. The court concluded that the hearing officer correctly applied the law and that the agency decision was supported by reliable, probative and substantial evidence.
 {¶ 8} Brown died during the pendency of the appeal, and Ordosch now asserts four errors for our review. For the sake of convenience, we will combine them where appropriate.
 {¶ 9} For her first assignment of error, Ordosch contends that the ODJFS erred by incorrectly characterizing the promissory note as one of Brown's assets. For her fourth assignment of error, she maintains that the ODJFS's interpretation of OAC *Page 5 5101:1-39-27.3 is contrary to the interpretation promulgated by Dennis G. Smith, the director of the Center for Medicare and Medicaid Services.[1]
 {¶ 10} We begin by noting the standards of review. Pursuant to R.C. 5101.35, parties who disagree with decisions issued by the ODJFS may seek judicial review in the court of common pleas of the county in which they reside. R.C. 119.12. The trial court must then conduct a hearing, consider the entire record, and must affirm an agency's decision where it is supported by "reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12.
 {¶ 11} On appeal, the reviewing court must determine only whether the trial court abused its discretion. Pons v. Ohio State Med. Bd.,66 Ohio St.3d 619, 621, 614 N.E.2d 748, 1992-Ohio-122. That is, the record must show more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id.
 {¶ 12} The Medicaid program was established in 1965 under Title XIX of the Social Security Act, 42 U.S.C. 1396 et seq., to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." Harris v. McRae (1980),448 U.S. 297, 301, 65 L.Ed.2d 784, 100 S. Ct. 2671. In Ohio, eligibility requirements are set forth in R.C. 5111.01 et seq. See, also, Ohio Adm. Code 5101:1-39. In determining whether an individual is eligible for Medicaid in Ohio, an *Page 6 
applicant's countable resources cannot exceed $ 1,500. Ohio Adm. Code 101:1-39-05(A)(8). Resources are "cash and any other personal property, as well as any real property, that an individual *** owns, has the right, authority, or power to convert to cash (if not already cash), and is not legally restricted from using for his support and maintenance." Ohio Adm. Code 5101:1-39-05(A)(1). In conducting a resource assessment, ODJFS may only apply countable resources, which are "those resources remaining after all exemptions have been applied," toward the resource limitation. Ohio Adm. Code 5101:1-39-05(A)(2).
 {¶ 13} The Agency is also required to review any transfer of an applicant's resources in order to determine if any transfer is improper. Ohio Adm. Code 5101:1-39-07 (A).
 {¶ 14} A resource transfer is considered to be improper if, inter alia, the individual transferred his legal interest in a countable resource to avoid utilization of the resource. Ohio Adm. Code 101:1-39-07(B). The applicant can rebut the presumption that the transfer was improper by providing a full written accounting of the transfer, with facts supporting the contention that the transfer was made for reasons unrelated to qualify for assistance. OAC 5101.1-39-07.
 {¶ 15} The consideration of promissory notes is governed by OAC5101:1-39-27.3. In relevant part, this section states:
 {¶ 16} "C) The following guidelines apply to promissory notes held by an individual. *Page 7 
 {¶ 17} "(1) A promissory note is an available resource unless it cannot be sold.
 {¶ 18} "(2) If the terms of the promissory note prohibit or prevent the sale of the note, the assets given in exchange for the note must be considered improperly transferred, in accordance with the transfer of resources rule in Chapter 5101:1-39 of the Administrative Code, if the exchange occurred within the look-back period.
 {¶ 19} "* * *
 {¶ 20} "(F) Funds used to purchase a promissory note, mortgage orloan.
 {¶ 21} "(1) With respect to a transfer of assets, as referenced in rule 5101:1-39-07 of the Administrative Code, funds used to purchase apromissory note, mortgage or loan are considered an asset unless the promissory note, mortgage or loan:
 {¶ 22} "(a) Has a repayment term that is actuarially sound as determined in accordance with actuarial publications of the office of the chief actuary in 26 C.F.R. 20.2031-7 as in effect April 1, 2005;
 {¶ 23} "(b) Provides for payments made in equal amounts during the term of the promissory note, mortgage or loan, with no deferral and no balloon payments made; and
 {¶ 24} "(c) Prohibits the cancellation of the balance upon the lender's death." (Emphasis added).
 {¶ 25} In this matter, the ODJFS concluded that the assets which Brown gave in exchange for the $43,876 promissory note were an improper transfer. The trial court *Page 8 
found that the agency decision was supported by reliable, probative and substantial evidence. We conclude that the trial court did not abuse its discretion in this matter.
 {¶ 26} Ordosch insists that the promissory note meets all of the requirements of subpart (F) of OAC 5101:1-39-27.3, is therefore not an asset, and thus cannot be subject to the improper transfer of assets rule of subpart (C) of this provision. This argument fails for two reasons.
 {¶ 27} First, the agency determined and the trial court agreed that the promissory note did not meet all requirements of subpart (F) since the interest was deferred and it was not clear that the note prohibited the cancellation of the balance upon Brown's death.
 {¶ 28} Second, we note that subpart (C) and subpart (F) of OAC5101:1-39-27.3 examine separate issues. Under subpart (C), the inquiry is whether the applicant's promissory note is to be considered an available resource. Subpart (F) traces the funds used to purchase the note in order to make the mandatory determination of whether there has been an improper transfer of those funds. Thus, under subpart (C), thepromissory note is an available resource unless it cannot be sold. Determining that the note is or is not an available resource does not foreclose inquiry as to the funds used to obtain a non-sellable note. As noted by the ODJFS:
 {¶ 29} "We think there is a reasoned distinction between, on the one hand, the transfer of funds as a loan in exchange for a promissory note; and, on the other hand, the further disposition and consideration of that note for Medicaid eligibility purposes." *Page 9 
 {¶ 30} In accordance with all of the foregoing, we cannot conclude that the trial court abused its discretion in affirming the determination rendered by the ODJFS. Accord Notarian v. Ohio Dept ofHuman Serv. (Nov. 22, 2000), Cuyahoga App. No. 77032 (affirming determination that transfer of assets in exchange for promissory notes was an improper transfer where the notes had no fair market value, were non-negotiable and non-transferrable); Albert v. Ohio Dep't. of HumanServs. (2000), 138 Ohio App.3d 31, 740 N.E.2d 310 (affirming determination that promissory note was not made for fair market value). We reject the first assignment of error.
 {¶ 31} Turning to the fourth assignment of error, we note that the agency's decision and, in particular its "reasoned distinction" between the promissory note and the funds used in exchange for it, are fully supported by the interpretation promulgated by Dennis G. Smith, the director of the Center for Medicare and Medicaid Services. Director Miller warned:
 {¶ 32} "[I]ndividuals * * * have attempted to circumvent rules."
 {¶ 33} Accordingly, we reject the fourth assignment of error.
 {¶ 34} For her second assignment of error, Ordosch complains that the ODJFS erred in concluding that the monthly repayments of the promissory note are "income."
 {¶ 35} Under OAC 5101:1-39-08 (R) (5) (5) "Money an individual borrows or money received as the repayment of the principal of a bona fide loan is not considered income." Pursuant to OAC 5101:1-39-27.3 (C)(3), "[p]ayments received by an *Page 10 
individual under a promissory note are treated as income, as defined in Chapter 5101:1-39 of the Administrative Code."
 {¶ 36} In this matter, the agency determined, and the trial court found sufficient supporting evidence that the loan was not a "bona fide loan," but was rather an improper transfer of assets. For all of the reasons set forth supra, we cannot conclude that the trial court abused its discretion in so finding.
 {¶ 37} The second assignment of error is without merit.
 {¶ 38} For her third assignment of error, Ordosch maintains that sub part (C) of 5201:1-39-27.3 which states that if the terms of the promissory note prohibit or prevent the sale of the note, the assets given in exchange for the note must be considered improperly transferred, has no federal counterpart. She therefore asserts that this provision is more restrictive than the federal provisions pertaining to promissory notes, 42 U.S.C. 1396 (C)(1)(I), et seq., and is therefore invalid.
 {¶ 39} In Roach v. Morse (2nd Cir. 2005), 440 F.3d 53, the court applied 20 C.F.R. § 416.1246(e), the resource transfer rule, and determined that where there has been a transfer of resources, such as a non-negotiable loan, for less than fair market value during the lookback period, the transfer is presumed to have been made for the purpose of qualifying for Medicaid. Roach v. Morse (2nd
Cir. 2005), 440 F.3d 53. Accord 42 U.S.C. § 1396p transfers of assets;42 U.S.C. 1382b(c) Disposal of resources for less than fair market value.
 {¶ 40} This assignment of error is therefore without merit. *Page 11 
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and JAMES J. SWEENEY, J., CONCUR
[1] Ordosch additionally asserted that the interpretation applied in this matter was contrary to a decision reached in ODJFS Case No. 1387384. The record indicates that the determination rendered in Case No. 1387384 has subsequently been reversed. *Page 1