[Cite as *Gardner v. Ohio Dept. of Job & Family Servs.*, 2022-Ohio-2021.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| DIANNA G. GARDNER, by and through her daughter and power of attorney, Kelly Strunk, | : | APPEAL NO. C-210376 TRIAL NO. A-2001239 |
|  | : |  |
| Plaintiff-Appellant, | : | *O P I N I O N.* |
| vs. | : |  |
| OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, | : |  |
| Defendant-Appellee. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: June 15, 2022

*Pro Seniors, Inc., Matthew B. Barnes* and *Miriam H. Sheline*, for Plaintiff-Appellant,

*Dave Yost,* Ohio Attorney General, and *Angela M. Sullivan*, Assistant Attorney General, for Defendant-Appellee.

**CROUSE, Judge.**

{¶1} On March 19, 2019, plaintiff-appellant Diana Gardner entered the Burlington House Rehab and Alzheimer's Center. At the time of her admission, Gardner owned real property in West Virginia, but had been attempting to sell the property since December 2018. On August 20, 2019, Gardner applied for long-term Medicaid. The Hamilton County Department of Job and Family Services ("HCJFS") rejected her application because it determined that Gardner's resources, including the West Virginia property, exceeded $2,000, the Medicaid-eligibility-resource limit.

{¶2} In October 2019, Gardner appealed the decision and requested a state hearing with the Ohio Department of Job and Family Services ("ODJFS") in accordance with R.C. 5101.35(B). The hearing officer affirmed HCJFS's decision. Gardner filed an administrative appeal to the director of ODJFS in accordance with R.C. 5101.35(C). The director affirmed the denial of Gardner's Medicaid application. Gardner appealed to the Hamilton County Common Pleas Court pursuant to R.C. 5101.35(E). Her case was heard by a magistrate, who affirmed the denial of her Medicaid application. She filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision.

{¶3} Gardner has appealed, arguing in one assignment of error that the trial court erred in upholding ODJFS's denial of her Medicaid application for being over the Medicaid-eligibility-resource limit. She contends that ODJFS, when calculating a Medicaid applicant's resources, is required to exclude real property that the applicant is making reasonable efforts to sell.

### *Standard of Review*

**{¶4}** Our review of factual issues is limited to determining whether the common pleas court abused its discretion in finding that ODJFS's decision was supported by reliable, probative and substantial evidence. *Weaver v. Ohio Dept. of Job & Family Servs.*, 153 Ohio App.3d 331, 2003-Ohio-3827, 794 N.E.2d 92, ¶ 3 (1st Dist.). On questions of law, we review de novo. *Id.* "Courts must give due deference to an administrative agency's construction of a statute or rule that the agency is empowered to enforce. Unless the construction is unreasonable or repugnant to that statute or rule, courts should follow the construction given to it by the agency." *Id.* at ¶ 12.

**{¶5}** However, a court owes no duty of deference to an administrative interpretation if the ordinance is unambiguous. *Twism Ents., LLC v. State Bd. of Registration*, 1st Dist. Hamilton Nos. C-200411 and C-210125, 2021-Ohio-3665, ¶ 16, quoting *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 29. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Twism* at ¶ 16, quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). "A statute is ambiguous when its language is subject to more than one reasonable interpretation." *Twism* at ¶ 18.

### *Medicaid and the Reasonable-Efforts Exclusion*

**{¶6}** In order to understand Gardner's argument, we must first analyze the interplay between the federal Medicaid and Supplemental Security Income ("SSI") programs. Title XIX of the Social Security Act established the Medicaid program. The federal Medicaid provisions are contained in 42 U.S.C. 1396 et seq. "Medicaid is a

cooperative federal-state program that provides federal funding for state medical services to the poor. State participation is voluntary; but once a State elects to join the program, it must administer a state plan that meets federal requirements." (Citation omitted.) *Frew v. Hawkins*, 540 U.S. 431, 433, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004).

{¶7}  Pursuant to 42 U.S.C. 1396a(a)(10)(A)(ii)(X), "A State plan for medical assistance must provide * * * for making medical assistance available, * * * at the option of the State, to any group or groups of individuals described in 42 U.S.C.S § 1396d(a) * * * who are not individuals described in clause (i) of this subparagraph but * * * who are described in subsection (m)(1)." 42 U.S.C. 1396d(a)(iii) includes individuals who are age 65 years or older.

{¶8}  According to 42 U.S.C. 1396a(m),

(1) Individuals described in this paragraph are individuals—

(A) who are 65 years of age or older or are disabled individuals (as determined under section 1614(a)(3) [42 U.S.C.S § 1382c(a)(3)]),

(B) whose income (as determined under section 1612 [42 U.S.C.S § 1382a] for purposes of the supplemental security income program, except as provided in paragraph (2)(C)) does not exceed an income level established by the State consistent with paragraph (2)(A), and

(C) whose resources (*as determined under section 1613 [42 U.S.C.S § 1382b] for purposes of the supplemental security income program*) do not exceed (except as provided in paragraph (2)(B)) the maximum amount of resources that an individual may have and obtain benefits under that program.

(Emphasis added.)

**{¶9}** Title XVI of the Social Security Act established the SSI program (42 U.S.C. 1381 et seq.). The purpose of SSI is to "insure a minimum level of income for persons who are over age 65, or blind, or disabled, who do not have sufficient income and resources to maintain a standard of living at the established federal minimum income level." *Coker v. Ulch*, 166 Ohio App.3d 778, 2006-Ohio-2349, 853 N.E.2d 358, ¶ 23 (6th Dist.).

**{¶10}** 42 U.S.C. 1382b contains the definition of "resources" for SSI. By its citation in 42 U.S.C. 1396a(m)(1), section 1382b also defines resources for federal Medicaid eligibility. *See Underwood v. Ohio Dept. of Job & Family Servs.,* 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, ¶ 28.

**{¶11}** Furthermore, 42 U.S.C. 1396a(r)(2)(a) provides,

The methodology to be employed in determining income and resource eligibility for individuals under subsection * * * (a)(10)(A)(ii) * * * *may be less restrictive, and shall be no more restrictive,* than the methodology—

(i) in the case of groups consisting of aged, blind, or disabled individuals, *under the supplemental security income program under title XVI [42 U.S.C.S §§ 1381 et seq.]*

* * *

(B) For purposes of this subsection and subsection (a)(10), methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

(Emphasis added.)

{¶12} In other words, if an applicant would be eligible for SSI, but not for Medicaid, then the Medicaid regulations are too restrictive. *See Underwood,* 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, at ¶ 22 ("States opting to participate in the Medicaid program can choose one of three options: SSI criteria, 209(b), and 1634. Eligibility is determined differently under each option. The '1634 states', including Ohio as of August 1, 2016, allow the SSA to make Medicaid eligibility determinations for SSI recipients. In such states, if the SSA determines that an individual is eligible for SSI, that individual is automatically enrolled in Medicaid without further verification required."); *May v. Azar*, 302 So.3d 222, 247 (Ala.Civ.App.2019), fn. 23 ("It may also help to keep in mind that, although all persons qualified to receive benefits under the SSI program may qualify for the Medicaid program, the reverse is not true * * *.").

{¶13} 42 U.S.C. 1382b also provides for the reasonable-efforts exclusion at the center of the controversy in the present case:

(b) Disposition of resources; grounds for exemption from disposition requirements.

(1) The Commissioner of Social Security shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal; and any benefits so paid shall (at the time of the disposal) be considered overpayments to the extent they would not have been paid had the disposal occurred at the beginning of the period for which such benefits were paid.

(2) Notwithstanding the provisions of paragraph (1), the Commissioner of Social Security shall not require the disposition of any real property for so long as it cannot be sold because (A) it is jointly owned (and its sale would cause undue hardship, due to loss of housing, for the other owner or owners), (B) its sale is barred by a legal impediment, or (C) as determined under regulations issued by the Commissioner of Social Security, *the owner's reasonable efforts to sell it have been unsuccessful.*

(Emphasis added.)

{**¶14**} The reasonable-efforts exclusion applies to Medicaid applicants. *See May*, 302 So.3d at 241-242 (recognizing that the exclusions of 1382b "generally are incorporated" into a state's Medicaid plan pursuant to 1396a(a), including in Alabama); *see also Fabula v. Buck,* 598 F.2d 869, 873 (4th Cir.1979) ("The Social Security Act expressly allows an applicant for SSI benefits, whose assets exceed that program's eligibility limits, to dispose of the excess assets in order to become eligible. The individual is entitled to receive conditional SSI payments pending the disposal, and during this period the state must provide Medicaid benefits to him.") (Citation omitted.)

### *"Countable Resources" under the Ohio Administrative Code*

{**¶15**} Gardner acknowledges that at the time she applied for Medicaid, the Ohio Administrative Code did not explicitly provide for a reasonable-efforts exclusion. Nonetheless, she argues that her real property is not a "countable resource" under the code because she did not have the "legal ability to access [the property] in order to convert it to cash."

{¶16} According to the Ohio Administrative Code that was in effect at the time Gardner applied for Medicaid (2019 version), an individual was ineligible for Medicaid if his/her resources exceeded $2,000. Ohio Adm.Code 5160:1-3-05.1(B)(8)(a). " 'Resources' means cash, funds held within a financial institution, investments, personal property, and real property an individual and/or the individual's spouse has an ownership interest in, *has the legal ability to access in order to convert to cash*, and is not legally prohibited from using for support and maintenance." (Emphasis added.) Ohio Adm.Code 5160:1-3-05.1(B)(7), citing Ohio Adm.Code 5160:1-1-01(B)(81).

{¶17} Gardner argues that two federal regulations, 20 C.F.R. 416.1201 and 416.1245 should inform our interpretation of Ohio Adm.Code 5160:1-1-01(B)(72).

{¶18} 20 C.F.R. 416.1201(a)(1) defines "resources" in the SSI context and provides in relevant part: "If a property right cannot be liquidated, the property will not be considered a resource of the individual." 20 C.F.R. 416.1201(c) defines "nonliquid resources," which are excluded from the section 416.1201(a) definition of resources, as, inter alia, "property * * * which cannot be converted to cash within 20 days" and provides examples including buildings and land. *Underwood*, 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, at ¶ 20. Gardner contends that SSI provided "a separate rule for disposing of real property" in 20 C.F.R. 416.1245(b)(1) ("Excess real property is not included in countable resources for so long as the individual's reasonable efforts to sell it have been unsuccessful."). She contends that the test to determine whether a resource is countable is whether it can be converted to cash.

{**¶19**} This court rejected Gardner's argument in *Cowan v. Ohio Dept. of Job & Family Servs.*, 2021-Ohio-1798, 173 N.E.3d 109 (1st Dist.). "The first problem * * * is that 20 C.F.R. 416.1201 deals with SSI determinations, a federal obligation. And Ohio courts considering similar arguments have squarely rejected the grafting of 20 C.F.R. 416.1201 onto Medicaid eligibility, which represents a state responsibility." *Id.* at ¶ 15; *Underwood*, 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, at ¶ 29 (holding "20 C.F.R. 416.1201 inapplicable to determining Ohio Medicaid eligibility"); *Communicare v. Ohio Dept. of Job and Family Servs.,* 8th Dist. Cuyahoga No. 106874, 2019-Ohio-3757, ¶ 14-15 (same).

{**¶20**} The *Cowan* court also analyzed the plain language of the definition of "resource" under Ohio Adm.Code 5160:1-1-01(B) and concluded that " 'legal ability to access' precludes an exemption for impracticability." *Cowan* at ¶ 16. If the applicant has the legal authority to sell the property, the plain language of the code renders it a countable resource, assuming some other exclusion does not apply. *Cowan* at ¶ 16, citing *Communicare* at ¶ 13 ("Whether [the applicant] was able to find a purchaser is a wholly different consideration from what the regulation contemplated, namely whether [the applicant] had the legal authority to sell the  properties in the first place.").

{**¶21**} SSI's definition of "resources" in 20 C.F.R. 416.1201 is inapplicable in the Medicaid context and does not inform our interpretation of "resources" under the Ohio Administrative Code.

{**¶22**} Unable to achieve exclusion under the plain language of the Ohio Administrative Code, Gardner contends that *Cowan, Underwood,* and *Communicare*

are inapposite because they did not address the applicability of the reasonable-efforts exclusion in 42 U.S.C. 1382b(b)(2) to Ohio Medicaid law.

### *Ohio Medicaid State Plan*

**{¶23}** Gardner argues that the reasonable-efforts exclusion in 42 U.S.C. 1382b(b)(2) is incorporated into Ohio law through the Ohio Medicaid State Plan.[1]

**{¶24}** To be eligible for Medicaid, an individual must meet all eligibility requirements set out in an approved state plan amendment, including resource-eligibility requirements. Ohio Adm.Code 5160:1-2-10(B)(8)(b); s*ee* R.C. 5162.05(A)(1) ("The medicaid program shall be implemented in accordance with * * * the medicaid state plan * * *").

**{¶25}** Gardner argues the Medicaid State Plan, in accordance with federal law, requires that Ohio use resource-eligibility criteria that is no more restrictive than SSI-eligibility criteria, which thereby incorporates the reasonable-efforts exclusion into Ohio law.

**{¶26}** At the time Gardner applied for Medicaid, the Medicaid State Plan provided the following:

5. Methods for Determining Resources

b. Aged individuals. For aged individuals covered under section 1902(a)(10)(A)(ii)(X) of the Act, the agency uses the following methods for treatment of resources:

_____The methods of the SSI program.

\_\_\_\_X\_\_SSI methods and/or any more liberal methods described in Supplement 8c to Attachment 2.6-A.

---

[1] The Ohio Medicaid State Plan can be accessed at https://medicaid.ohio.gov/about-us/medicaid-state-plan/msp-sections.

_____Methods that are more restrictive (except for individuals described in section 1902(m)(1) of the Act) and/or more liberal than those of the SSI program. Supplement 5 to Attachment 2.6-A describes the more restrictive methods and supplement 8b to Attachment 2.6-A specifies the more liberal methods.

Ohio Medicaid State Plan, Section 2.6A, page 16a, citing 42 U.S.C. 1396a(a)(10)(A), 1396a(m)(1)(C), and 1396a(r).[2]

{¶27} Two conclusions can be drawn from the foregoing: (1) Ohio must, and has agreed to, determine Medicaid eligibility using methodology that is no more restrictive than SSI eligibility criteria, and (2) a Medicaid eligibility methodology that does not include a reasonable-efforts exclusion is more restrictive than SSI's eligibility criteria, which means that Ohio must provide for a reasonable-efforts exclusion.

### *Conditional Benefits*

{¶28} In concluding otherwise, the trial court held that the reasonable-efforts exclusion falls under SSI "conditional benefits." It described SSI payments made under the reasonable-efforts exclusion as conditional, refundable "overpayments." It found that when the reasonable-efforts exclusion applies, the applicant is allowed to collect SSI payments for up to nine months while attempting to sell the property, but is not actually eligible for SSI during that timeframe because the value of the real property placed the applicant over the resource limit. *See* 20 C.F.R. 416.1240 and 1242(a).

{¶29} The trial court held that Medicaid does not, and cannot, provide for conditional benefits because: (1) conditional benefits are recoverable by the state,

---

[2] Section 2.6A, page 16a has since been superseded by "TN 20-0015, Non-MAGI Based Methodologies."

which creates a conflict with Medicaid's anti-recovery provision (42 U.S.C. 1396p); (2) calculating refundable benefits in the Medicaid context is impractical; and (3) Ohio did not have "reasonable notice" of the requirement to include a reasonable-efforts exclusion.

{¶30} The trial court failed to discern the purpose of the conditional-benefits period. The state is permitted to recover payments made during the nine-month conditional-benefits period, but this period does not make all payments made as a result of the reasonable-efforts exclusion "conditional"; rather, the period is used to evaluate whether the efforts to sell have been reasonable and unsuccessful.

{¶31} Congress amended 42 U.S.C. 1382b(b) in 1987. *Will v. Kizer*, 208 Cal.App.3d 709, 717-718, 256 Cal.Rptr. 328 (1989). Shortly thereafter, interim rules were promulgated regarding "reasonable efforts to sell." The substance of these interim rules became 20 C.F.R. 416.1245. *Id.* at 718; *compare* 20 C.F.R. 416.1245.

> While the secretary's interim regulations continue to insist on a conditional payment period "*to evaluate the reasonableness of the individual's efforts to sell*," the secretary agrees that "once reasonable efforts have been demonstrated (as defined by the Secretary in regulations), and such efforts have proven unsuccessful, the individual's eligibility for SSI benefits is no longer conditioned upon the disposal of the individual's property; instead, the property will not be counted as a resource and the individual will be eligible for SSI benefits for so long as he or she continues reasonable efforts to sell."

(Emphasis added.) *Will* at 719, quoting 53 Fed.Reg. 13254 and 13255.

**{¶32}** 20 C.F.R. 416.1245 is entitled "Exceptions to required disposition of real property." It provides:

Excess real property is not included in countable resources for so long as the individual's reasonable efforts to sell it have been unsuccessful. *The basis for determining whether efforts to sell are reasonable, as well as unsuccessful, will be a 9-month disposal period described in § 416.1242.* If it is determined that reasonable efforts to sell have been unsuccessful, *further SSI payments will not be conditioned* on the disposition of the property and only the benefits paid during the 9-month disposal period will be subject to recovery. In order to be eligible for payments after the conditional benefits period, the individual must continue to make reasonable efforts to sell.

(Emphasis added.)

**{¶33}** The text of 42 U.S.C. 1382b also demonstrates a distinction between conditional benefits and the reasonable-efforts exclusion:

(b) Disposition of resources; grounds for exemption from disposition requirements.

(1) The Commissioner of Social Security shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal; and any benefits so paid shall (at the time of the disposal) be considered

overpayments to the extent they would not have been paid had the disposal
occurred at the beginning of the period for which such benefits were paid.

(2) *Notwithstanding the provisions of paragraph (1),* the Commissioner
of Social Security *shall not require the disposition of any real property* for
so long as it cannot be sold because * * * (C) as determined under
regulations issued by the Commissioner of Social Security, the owner's
reasonable efforts to sell it have been unsuccessful.

(Emphasis added.)

{**¶34**}   In other words, despite the conditional-payments provision in 42 U.S.C.
1382b(b)(1), real property which an applicant is making reasonable efforts to sell is
excluded as a resource.

{**¶35**} The Program Operations Manual System ("POMS")[3] contains
administrative interpretations by the Social Security Administration and is not the
product of formal rulemaking, but its interpretations are nonetheless relevant to our
determination. *See Washington State Dept. of Social & Health Servs. v. Guardianship
Estate of Keffeler*, 537 U.S. 371, 385, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003).

{**¶36**}   POMS SI 01130.140 is entitled "Real Property Following Reasonable but
Unsuccessful Efforts to Sell It Throughout a 9-Month Period of Conditional Benefits."
It states:

Real property that an individual has made reasonable but unsuccessful
efforts to sell throughout a 9-month period of conditional benefits will
continue to be excluded for as long as:

• the individual continues to make reasonable efforts to sell it

---

[3] Accessible at https://secure.ssa.gov/apps10/.

* * *

2. Distinction Between This And The Conditional Benefits Exclusion

If the property is later sold, benefits paid during the 9-month conditional-benefits period are subject to recovery as overpayments. *Benefits paid as a result of this exclusion are not subject to recovery as overpayments of conditional benefits.*

(Emphasis added.) *Accord* "Conditional Benefits Overpayments," POMS SI 01150.202 ("If the conditional-benefits period ends without sale of excess real property, despite continuing reasonable efforts to sell, see SI 01130.140 for its continued exclusion. Refund of the conditional benefits overpayment is not due unless or until a sale occurs so long as the owner continues to make reasonable efforts to sell."); "Conditional Benefits," POMS SI 01150.200 ("[W]hen the excess resources are in the form of real property which cannot be sold for certain specified reasons (undue hardship or unsuccessful reasonable efforts to sell), the owner can receive regular (not conditional) benefits."); "Excluded Resources," POMS SI 01110.210 (no time limit on the exclusion of property under the reasonable-efforts exclusion).

{¶37} The primary purpose of requiring the nine-month conditional-benefits period is to evaluate whether the efforts to sell have been reasonable and unsuccessful. SSI benefits paid because of the reasonable-efforts exclusion are not inherently conditional benefits.

## A. Anti-Recovery Provision

{¶38} The trial court held that the state would be prohibited from recovering conditional Medicaid benefits paid to Gardner because the benefits would have been "correctly paid," and under 42 U.S.C. 1396p(b) ("anti-recovery provision"), correctly

paid benefits are recoverable by the state only in narrow circumstances. Therefore, the trial court held that to incorporate the reasonable-efforts exclusion into Medicaid would contradict 42 U.S.C. 1396p(b).

{¶39} Ohio must provide a conditional-benefits provision, *see* 42 U.S.C. 1382b(b)(1), and a reasonable-efforts exclusion for real property, *see* 42 U.S.C. 1382b(b)(2), but not necessarily together. It can provide a reasonable-efforts exclusion independent of conditional benefits.

{¶40} Pursuant to 20 C.F.R. 416.1245, the first nine months of benefits are recoverable as conditional benefits, but Ohio is not required to implement 20 C.F.R. 416.1245. *See Underwood*, 11th Dist. Geauga No. 2019-G-0215, 2019-Ohio-4924, at ¶ 28 (42 U.S.C. 1382b is specifically incorporated into the Medicaid Act. 20 C.F.R. 416.1201 cites 42 U.S.C. 1382b as one of its authorities, but that does not make 20 C.F.R. 416.1201 a Medicaid rule or incorporate it into the Medicaid statutory framework.).

{¶41} Ohio recently enacted Ohio Adm.Code 5160:1-3-05.1(C)(6) (effective April 1, 2022), which provides the criteria that must be met in order for property to be excluded due to unsuccessful attempts to sell the property. Although there was no equivalent provision in place when Gardner applied for Medicaid benefits, Ohio Adm.Code 5160:1-3-05.1(C)(6) expresses Ohio's chosen criteria for the reasonable-efforts exclusion and it does not require a conditional-benefits period.[4]

---

[4] The version of Ohio Adm.Code 5160:1-3-05.1(C)(6) effective April 1, 2022, is substantially the same as Ohio's previous version of Ohio Adm.Code 5160:1-3-05.1(C)(6), which was repealed in August 2016.

**{¶42}** Other states also provide for a reasonable-efforts exclusion without requiring a conditional-benefits period. *See, e.g.,* Michigan State Medicaid Plan, Supplement 8b to Attachment 2.6-A:[5]

> For the SSI-related categories of the Act:
>
> * * *
>
> Un-salable property is not a countable resource. The property is un-salable
> when either: a) two knowledgeable sources state the property is un-salable
> due to a specified condition, or b) an actual sale attempt is made and no
> reasonable offer to purchase has been received. *Conditional eligibility and*
> *repayment agreements are not required.*

(Emphasis added.)

**{¶43}** Furthermore, the state can seek recovery of its payments against Gardner's estate once she dies. *See* R.C. 5162.21; Ohio Adm.Code 5160:1-2-07; *see also California Advocates for Nursing Home Reform v. Bonta*, 106 Cal.App.4th 498, 508, 130 Cal.Rptr.2d 823 (2003) ("[B]ecause an applicant's principal residence is excluded as a countable resource in determining eligibility (see 42 U.S.C. § 1382b(a)(1)), some persons who possess valuable assets are allowed to receive benefits. Congress justified this incongruity by authorizing 'estate recovery,' that is, the recovery of all or a portion of the benefits paid from the estate of such a beneficiary after his or her death.").

## B. Impractical to Implement

**{¶44}** The trial court found that it would be impractical to allow for a reasonable-efforts exclusion in the Medicaid context because Medicaid does not provide cash payments like SSI; it provides medical care to needy individuals. The

---

[5] Accessible at https://www.mdch.state.mi.us/dch-medicaid/manuals/MichiganStatePlan/MichiganStatePlan.pdf.

court found that calculation of payments, very easy in the SSI context, would be complicated and sometimes impossible in the Medicaid context.

**{¶45}** As discussed above, Ohio must provide for a reasonable-efforts exclusion. Ohio has not incorporated 20 C.F.R. 416.1240-1245 into Ohio Medicaid law, and is not required to tie the reasonable-efforts exclusion to a conditional-benefits period. Ohio Adm.Code 5160:1-3-05.1(C)(6) (effective April 1, 2022) defines the conditions that must be met for application of the reasonable-efforts exclusion, and a conditional-benefits period is not among the conditions. Therefore, determining whether the efforts to sell have been reasonable and unsuccessful does not necessarily require calculating repayments.

## C. Clear Notice

**{¶46}** While Congress has broad power to set the terms on which it disburses federal money to the states, any conditions it attaches to a state's acceptance of such funds must be set out "unambiguously." *Arlington Cent. School Dist. Bd. of Edn. v. Murphy*, 548 U.S. 291, 296, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006), quoting *Pennhurst State School and Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). Legislation under the "Spending Power" is in the "nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Pennhurst* at 17. "Fund recipients are bound only by those conditions that they accept 'voluntarily and knowingly,' and states cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.' " *Arlington* at syllabus. Thus, Ohio must have "clear notice" that it must apply the reasonable-efforts exclusion in the Medicaid context. *Id.*

{¶47} The analysis begins with the text of the act. If the "language is plain," the court's duty "is to enforce it according to its terms." *Id.*, quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

{¶48} Ohio had clear notice that it was required to adopt Medicaid resource-eligibility criteria equivalent to or more liberal than SSI resource-eligibility criteria because it stated as much in the Ohio Medicaid State Plan. The state plan also cited to 42 U.S.C. 1396a(a)(10)(A), 1396a(m)(1)(C), and 1396a(r). The plain language of those sections is clear: resource eligibility for purposes of Medicaid is determined under 42 U.S.C. 1382b, and 1382b(b)(2) provides that the disposition of real property shall not be required for so long as it cannot be sold despite reasonable efforts to sell.

### 20 C.F.R. 416.1240

{¶49} Finally, the trial court held that even if the reasonable-efforts exclusion applies, Gardner does not meet the eligibility criteria because she did not furnish an agreement to sell the property within a certain period of time. *See* 20 C.F.R. 416.1240. The court stated that Gardner cannot "have it both ways" by arguing that 20 C.F.R. 416.1245 applies, but claiming that she was not required to furnish a signed agreement under 20 C.F.R. 416.1240.

{¶50} As discussed above, Ohio is required to provide a reasonable-efforts exclusion, but is not required to adopt 20 C.F.R. 416.1240-1245. Ohio is free to furnish its own criteria, and currently does not require that an applicant sign an agreement to sell the property within a certain period of time. *See* Ohio Adm.Code 5160:1-3-05.1(C)(6) (effective April 1, 2022).

### Conclusion

**{¶51}** The trial court erred in holding that the reasonable-efforts exclusion does not apply in the Medicaid context. The sole assignment of error is sustained. The trial court's judgment is reversed and the cause is remanded to ODJFS to determine whether Gardner meets the requirements of the reasonable-efforts exclusion.

Judgment reversed and cause remanded.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.